May it please the court, I'd like to reserve two minutes for rebuttal. This morning I'm going to focus primarily on one issue. Supreme Court precedent does not foreclose the plaintiff's challenge to Oregon's requirement that attorneys join the Oregon State Bar. In Keller v. State Bar of California, the Supreme Court held that a mandatory bar association violates attorneys' First Dues for political or ideological activities not germane to regulating the legal profession or improving the quality of services. At the end of the Keller decision, there was one issue. It was not resolved, and that's the question of whether it violates an attorney's right to freedom of association to require an attorney to join a bar association that engages in non-germane speech. The plaintiffs allege that the Oregon State Bar engages in non-germane speech. They allege that they don't want to be associated with that speech or with the bar, and they allege that requiring them to associate with that speech and with the bar violates their First Amendment right to freedom of association. It's true the plaintiff's claim... Counsel, that claim, so these are kind of weird cases because you start with Lathrop, however you say it, and then you have Keller, and then you have Morrow from our court, the Ninth Circuit, and it seems to me looking at the record in those cases that there's a strong argument that this claim that you're talking about, what I've called it, what I started calling the pure free association claim to distinguish it from the claim that was addressed in Keller, which has more to do with the money. That claim was raised in all those cases. It was raised in Keller. It's not real clear what they did in Lathrop. It's not super clear. It is clear to me that they did not address it in the second to last paragraph in Keller. They specifically said, and the Supreme Court gets to do that, but the weird thing is it does seem like it was raised in Morrow, and then it seems like Morrow said, well we're not addressing the claim that Keller didn't address, but it was raised in Morrow, and this court doesn't really get to... it's not like the Supreme Court. It can't just say we don't want to address the claim that you raised, even though you raised it. So what are we supposed to do with Morrow? I think it wasn't addressed in Morrow, but it was raised in Morrow, so what do we do with that? Well, one thing Morrow makes clear is that Keller did reserve an issue related to lawyers' right to freedom of association with respect to borrowers associations. Morrow is very unclear as to what that remaining issue is, but Keller is clear as to what that issue is, and that is association with... of our association. Morrow seemed to think that that was... it said... Morrow seemed to interpret, as best I can read Morrow, it seemed to interpret Keller as having reserved some sort of what you might call an extreme free association claim. I don't know if you're aware about that, but something more extreme than the claim that you're raising, or that was actually raised in Keller, or has actually raised in Morrow. In fact, I don't know if anybody's ever raised it. I think partly because it would be such an extreme claim. So if that's what Morrow was doing, it wasn't actually right. It wasn't correct. So what do we do with a decision that sort of incorrectly characterized a claim and then decided not to reach it? But there was a claim before it, and arguably it implicitly decided it. It implicitly decided the claims that were before. One thing that this court can do, a panel of this court, if it believes that a previous address is an issue, but the Supreme Court has in the meantime issued a decision that doesn't overrule that past decision, but is closely on point, the court can now take account of the intervening Supreme Court decisions. And since Keller and since Morrow, the Supreme Court has made clear that exacting First Amendment scrutiny applies to this sort of First Amendment. Yeah, but that's a pretty high standard if we're going to take a more recent Supreme Court case and say it has overruled. I mean, our standard on that is pretty high. Are we bound by a prior panel's decision if it just implicitly decided something? Not in this instance, where there's an intervening Supreme Court precedent that makes clear that there is a level of First Amendment scrutiny that the court should apply, but the court definitely didn't apply in the previous case. This court has never applied exacting First Amendment scrutiny to mandatory membership in a bar association that engages in non-germane speech. And certainly Lathrop didn't do that either. Lathrop didn't consider germane versus non-germane activities, and Keller specifically said that Lathrop had not addressed the freedom of association issue that it was reserving. So in light of all those things, this court... Let me ask you a related question. There's also sort of the weirdness, for lack of a better word, that I think I agree with you that Keller decided the money claim, but it did not decide the peer-free association claim. But Keller did allow there to be integrated bars. Lathrop did allow there to be integrated bars. Morrow did allow that. I mean, it's sort of odd to say for decades we've had these cases and they've allowed them by not reaching the claim, but they were unconstitutional all this time. I mean, you see what I'm saying? It's just kind of an odd circumstance for us to be in. Under those precedents, even if we put Janus versus AFSCME to the side, under those precedents you can have a bar association that is limited to engaging in germane speech, but the courts explicitly left open in Keller that you might not be able to have one that engages in non-germane speech and didn't address that. And given that it didn't address that, that's still an open question and it's one that's especially important to address now that the Supreme Court has clarified that exacting the First Amendment scrutiny should apply when you have this kind of association for expressive activity. The defendants argued that Harris versus Quinn addressed the exacting scrutiny issue. It did not do so. Harris versus Quinn involved mandatory fees taken from people who were not government, who received a government subsidy, and it makes sense that the court would want to clarify in Harris, as it did, that it wasn't overruling Keller when it said that, because of course Keller involved taking money from people who weren't government employees. But that's all the court was saying was Harris doesn't overrule Keller. Harris did not purport to address the issue that Keller left unresolved, obviously, and Harris also didn't say anything about whether mandatory membership could survive exacting scrutiny. It didn't say anything about whether the government could serve its interest in regulating the legal profession in a way that was less restrictive of First Amendment rights than a mandatory association. I'll touch briefly also on the plaintiff's first claim for relief, which alleges that even if mandatory membership isn't inherently unconstitutional, the Oregon State Bar doesn't provide the safeguards that Keller requires. Keller requires that an objecting member's dues be placed in escrow. The Oregon State Bar doesn't even purport to do that with an objecting member's dues, and yet the district court found that that requirement was satisfied, and that alone requires reversal on that claim. Also, plaintiffs allege that the Oregon State Bar doesn't provide sufficient information for members to judge the propriety of their dues, and the plaintiffs should have an opportunity to develop a record on that. The Keller decision contemplated that there might be alternative safeguards other than those that get specified that could suffice, and said consideration of those would have to come with a more fully developed record. So, at the very least, plaintiffs should have an opportunity to develop that record to determine whether what the Oregon State Bar is doing actually protects First Amendment rights in the way that Keller contemplates. Counselor, do you want to reserve? You only have about a minute left. I will  You may proceed. Good morning, Your Honors. May it please the Court? Elisa DiZono for Defendant Appellees. The district court in this case correctly noted that it was bound by Supreme Court and Ninth Circuit precedent. Counselor, do you agree that Keller left some claim open? Do you agree or not agree? I think that maybe Your Honor was on the right track in terms of maybe it left open a claim of some extreme situation where... That's not, okay, let me, okay, let me read what it says. It says, in addition to their claim for relief based on respondents use of their mandatory dues, their complaint requests an injunction prohibiting the State Bar from using its name to advance political and ideological causes or that's just another way of saying they want an injunction stopping the bar that they have to be a member of from engaging in non-germane stuff. And it says, this request for relief appears to implicate a much broader Freedom of Association claim that was at issue in Lathrop. In Lathrop, they only challenged or compelled financial support, but they urge that they cannot be compelled to associate with an organization that engages in political or ideological activities beyond those for which mandatory financial support is justified under the principles of NABUD. And then the Supreme Court says, California courts didn't address this. We decline to do so in the first instance. State courts, of course, can consider this on remand. That's not an extreme claim. That's exactly the claim that they're raising here. Now, maybe Morrow was talking about some sort of extreme claim. If that's the case, then Morrow was mischaracterizing Keller, but Keller was not talking about some extreme claim. And it would be kind of extreme and absurd for the Supreme Court to brought up an extreme claim because there was no extreme claim presented. I don't know of any case where they've presented some sort of like, they're actually like making me sign the bar's statements. So, you know, the bar's non-germane ideological statements. They're making me put my name. So, I don't think that's right, counsel, but tell me why I'm wrong. So, as you noted, Your Honor, under Agostini, if there's direct application of a Supreme Court case, then the Ninth Circuit must apply that precedent, even if it appears there to rest on some reasons that are rejected in some other lines of decisions by subsequent cases. So, what's a directly applicable case that says that it has what I call the pure free association claim? Well, I was going to say that Keller is actually the direct application here. But it's not. The second to last paragraph in Keller specifically left that claim open. It's not, if you, I went back and read it again last night. It's not some sort of extreme claim. It's exactly, almost word-for-word, the claim being raised in this case. But Keller specifically contemplates that there may be speech that a member of the bar just agrees with. And that's why you have the safeguards that are in place in order to protect. Right, right. So, Keller decides that in context of a different doctrine. It does. And so, that's what I was saying. It's a little weird that it left this open. But the Supreme Court gets to do that all the time. Supreme Court got two claims. We're going to address one. We're going to address one. But, you know, it must be nice to be a Supreme Court because they just don't have to address the other. Like, it could be that the other means that the activity is completely unconstitutional. But this just doesn't seem like the right case. In this case, what they said is, we want the California courts, we want this to percolate a little more in the lower courts. So, you're right that this other claim, the one that your opposing counsel didn't even talk about this morning because he's, you know, I think that is foreclosed by Keller, was decided by the courts. This claim was clearly not decided by Keller, I think. I disagree, Your Honor. It is decided because, as you said, the compulsory... What language in this paragraph would lead you to say that it's the extreme, what we might call the extreme free association claim? Because on page, page 15 through 16 of Keller, Keller's specific, the court is specifically talking about the difficulty in deciding where the line is between germane and non-germane speech. And so Keller is specifically contemplating that there will be speech that may be political or ideological. Yeah, no, I know, but it doesn't, it doesn't say what you do, it doesn't address this particular claim. So, yeah, it contemplates, yeah, but it doesn't address this claim. It addresses the safeguards that should be in place, as an example to Chicago Teachers versus Hudson, as the way that you would then protect a center's rights. Well, I think, I think your argument then, counsel, would be, and I understand it has a certain amount of force, to say, yeah, but the Supreme Court was kind of assuming that it must be constitutional because it allowed it to continue, but that's not really how the Supreme Court does things. The Supreme Court can completely decide one issue, leave another issue completely undecided, and then come back later, or have the lower courts come back later, and decide that the conduct was completely unconstitutional, even though this other doctrine didn't lead to the, that the other type of claim didn't lead to that conclusion. So, I don't think that works. I don't think it works to say, well, the Supreme Court was assuming that you could have this kind of speech. It doesn't work when the Supreme Court said, there's a whole claim that we haven't addressed, and we're blatantly leaving it open. We have to, this claim is not foreclosed to us, unless it's foreclosed by Morrow, I don't agree that Morrow definitively addresses the associational claim, because they specifically talk in Morrow about how a member of the California bar, with the number of its members, is, should not be, one member of the bar cannot be completely associated with all the members of the bar. So, as I read Morrow, as I read Morrow, it says, it's a weird decision, because it says multiple times, they complain about the fact that they're forced to be a part of this entity that engages in speech they don't agree with, and then at the very end it says, they don't complain about being a part of an entity that gives speech that they don't agree with, and so we're not going to reach that claim. It doesn't make sense to me, but how can that be binding on us? If that's, I mean, there's no analysis at all. If it did decide this issue, it didn't provide any you know, again, decide the compulsory membership issue, and then it's really the safeguards, I think, that both of those opinions are discussing. Well, counsel, let me ask you this. Pretend you're me for a second, and you're having trouble seeing that they decided this issue. How do you win on this claim, on the pure free association claim, if our hands aren't tied, and we have to reach it? I believe your hands aren't tied on the on the free association claim, as you're calling it, and they are also tied in terms of the, what is required for an integrated bar to continue to speak for its members on a political or ideological issue, so long as it is speaking regarding the purposes for which it is statutorily created, and that is for improving the quality of legal services or regulating its members. That's completely different from Janus, which was overturning Abood on the basis of the lack of a compelling governmental interest in labor peace or free ridership. Make sure I understand what you're saying. Are you saying that you, that, and this is an answer, I guess, is that they, is we don't engage in non-germane activity, and so as long as we don't engage in non-germane activity, then Lathrop would apply. I don't think Keller does, because Lathrop would apply to if you always behave yourself and never engage in non-germane activity. And the Oregon State Bar does have, in its bylaws, in numerous places, that it does not engage in non-germane speech, and that's why you have to have the safeguards. I think this is more about the safeguards than anything. I do also want to note that the Ninth Circuit has repeatedly held that a motion to dismiss is acceptable in a case like this because they have consistently held that Keller and Lathrop applied in an integrated bar speech case. And I would disagree with counsel, my opposing counsel, that Harris does not apply here. In Harris, Justice Alito, writing for the court, just as he did in Janus, noted that while the respondents contended that refusing to extend a boot would call into question Keller, that they were mistaken. And that, counsel, can I just, can I ask you, once again, because I think when I asked you earlier, how do you win if our hands aren't tied, you basically said, you did say your hands are tied. But I am curious, like, if I don't think my hands are tied, how do you win if we, I mean, first of all, do we apply? Do we apply Janus and all of the Supreme Court's free association precedent? What do we do if our hands aren't tied and we think that the Keller claim, not the Keller claim, the free association claim is an open question? If the, if what you're saying is that the open claim in Keller is a bar that consistently engages in non-germane speech, I don't think that's the situation here. You have a bar that has, in its bylaws, doesn't engage in non-germane speech, has constitutional procedures in place in accordance with prior Supreme Court precedent. But counsel, just saying, this is a motion to dismiss. And the plaintiffs said, you don't engage in germane speech. And they gave some examples of what, but at the end of the day, I don't know that we can just say, well, they're wrong on what they said. So assuming that you engage in some, maybe just a teeny bit, but you engage in some non-germane speech and assuming that the free association claim has not been decided by Keller and Morrow, then how do you win? Or how do we not send this back to have the court address this using the Supreme Court's pure free association precedent, which I think would include Janice and some other cases. Your Honor, I see that I'm out of time. May I can go? That's all right. I'll give you more time. So we still win because on a motion to dismiss, the facts are not here pled to survive a motion to dismiss under Iqbal. There are only conclusory allegations as to the bar's speech being non-germane. And here you have one instance in the 85 years of the Oregon State Bar where it's alleged that the bar engaged in non-germane speech. One instance where it's contested by some of its 14,000 members. And that's just simply not enough to survive a motion to dismiss under Iqbal. Thank you. Thank you, counsel, very much. You can use your time for rebuttal. Thank you. It certainly won't suffice to say that the Oregon State Bar has bylaws that says that it only does germane things. The bar has used that to argue against plaintiff's first claim for relief and say, we give you enough information about what we do because we have this bylaw that says everything we do is germane. Therefore, you know that everything we do is germane. But that's not how Keller is supposed to work. Under Keller, attorneys are supposed to be able to get information about what the bar is doing. And if the plaintiffs haven't pled more details about what the bar is doing with their money, that's in part because the bar doesn't provide them as counsel. Can I ask you one question about about that? And that is, I think that makes sense in the Supreme Court in the union context is very clear that you you can't just take their word for it. So that's the whole reason why we have these procedures. But there is a little bit of a difference here in that, you know, unions deliberately were engaging in and that they were going to they say we're going to do some non-germane stuff and we're going to do some we're going to do some political advocacy type stuff and we're going to. And so that's whereas here, why you don't necessarily have to take the bar's word for it. And maybe the bar does sometimes engage in non-germane speech. They try not to, it sounds like, unlike the unions, which they. So does that make a difference when you've got an entity that is trying not to, you know, that anticipates that generally speaking, it won't be engaging in non-germane speech, whereas other, you know, in the union context, I think they were oftentimes engaging in non-germane speech. It shouldn't make a difference because a bar association could consistently overestimate what counts as germane speech. And we have that issue here where the plaintiffs challenge statements that appear to be totally non-germane. And yet the bar association defends them as being germane, showing that it takes a different, much more expansive idea of what counts as germane speech. And whether it's intentional or not, attorneys have the same right and the same interest in protecting themselves against subsidizing that speech. Thank you, counsel. Thank you both. This case, Crow v. Oregon State Bar, will be submitted.
judges: Bybee, Vandyke, Cardone